**E-FILED on**   5/16/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>LOCKHEED MARTIN SPACE OPERATIONS COMPANY; LOCKHEED MARTIN CORPORATION; CARLA BARNS; MARY SESSLER; and DOES 1-50;<br><br>Defendants. | No. C-05-05210 RMW<br><br>ORDER DISMISSING CERTAIN CLAIMS AND GRANTING PLAINTIFF'S MOTION FOR REMAND<br><br>[Re Docket Nos. 4, 7, 9] |

Plaintiff Michael Williams moves to remand this action back to the California Superior Court. For the reasons set forth below, the court grants plaintiff's motion.

## I. BACKGROUND

The following facts are taken from the parties' briefs and are not disputed for the purpose of this motion: Defendants Lockheed Martin Space Operations Company and Lockheed Martin Corporation (collectively "Lockheed") employed Williams as a "Vehicle Test Inspector - Senior." Williams belongs to the International Association of Machinists and Aerospace Workers, which has entered into a collective bargaining agreement ("CBA") with Lockheed covering Williams's position with the company.

Williams missed a week of work in May 2004 after he sought treatment for alcoholism. On May 23, 2004, Williams notified his supervisor, defendant Carla Barnes, via e-mail that he was under a doctor's care and would be absent from work indefinitely. In a June 1, 2004 letter, Barnes, on behalf of Lockheed, fired Williams because of his absence. On June 22, 2004, Williams filed a grievance through his union. On August 13, 2004, the union and Lockheed agreed to Williams's reinstatement with numerous conditions, such as his enrollment in Lockheed's "Employee Assistance Program" and clearance by Lockheed's medical department before returning to work. Williams objected to these terms and did not return to work. Lockheed again fired Williams.

Williams initially filed suit in the California Superior Court against Lockheed, Barnes, and Mary Sessler on July 11, 2005. On December 15, 2005, Lockheed[1] removed the case to this court pursuant to 28 U.S.C. § 1441(b), claiming Williams's causes of action are all preempted by § 301 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185(a). On January 17, 2006, Williams moved for remand; he claims none of his causes of action are preempted and that this court therefore lacks jurisdiction over his suit.

## II. ANALYSIS

**A. Jurisdiction**

Although a plaintiff is generally the master of his complaint and can avoid federal jurisdiction by limiting himself to state-law theories of recovery, claims within the ambit of § 301 of the NLRA so completely preempt state law that a claim cognizable under § 301 will be treated as a federal cause of action, even if pleaded in entirely state-law terms. *See generally* Charles Alan Wright & Mary Kay Kane, *Law of Federal Courts* § 38 (6th ed. 2002). Section 301 governs all "relationships created by a collective-bargaining agreement;" and "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 220 (1985) (brackets and citation omitted).

---

[1] Williams has yet to serve defendants Barnes and Sessler.

Williams's complaint contains claims for violations of California Government Code § 12900 *et seq.*, California Labor Code § 1025, and California public policy, as well as a claim for intentional infliction of emotional distress. In their notice of removal, defendants assert that plaintiff's claims are preempted by § 301 of the NLRA, and that this court therefore has jurisdiction pursuant to 28 U.S.C. § 1331.

The burden of pleading and proving federal jurisdiction is on the party seeking to invoke federal jurisdiction. *Sissoko v. Rocha*, 412 F.3d 1021, 1035 (9th Cir. 2005). In support of its assertion that federal jurisdiction exists over the present dispute, Lockheed offers a copy of the collective bargaining agreement between itself and the union. Notice of Removal, Ex. 7. The Ninth Circuit has instructed that "a district judge may generally consider a document outside the complaint when deciding a motion to dismiss if the complaint specifically refers to the document and if its authenticity is not questioned." *Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002). Additionally, "a district court is free to hear evidence regarding jurisdiction and to resolve factual disputes in determining whether it has jurisdiction over a claim." *Id.*; *see also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (noting that although complaint did not mention collective bargaining agreement, district court "properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction").

Williams acknowledges the existence of a collective bargaining agreement that covers his employment with Lockheed. Since the existence of the collective bargaining agreement is central to the existence of federal jurisdiction over this case, and the plaintiff does not challenge its authenticity, the court will consider it.

**B. Preemption**

For this court to have jurisdiction over Williams's action, at least one of his causes of action must be preempted by § 301 of the NLRA. Lockheed argues that all causes of action are preempted under *Miller v. AT&T Network Systems*, 850 F.2d 543 (9th Cir. 1988); Williams claims that each is not.

In *Miller*, the Ninth Circuit articulated a three-pronged test for determining whether state-law rights are independent of § 301:

> In deciding whether a state law is preempted under section 301, . . . a court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is "no."

850 F.2d at 548 (footnote omitted). The "particularly compelling" interest behind preemption under § 301 is "uniform interpretation of labor contract terms." *Id*. at 545. The Ninth Circuit has noted that

> [a]lthough its scope is substantial, section 301 does not preempt every suit concerning employment. If a court can uphold state rights without interpreting the terms of a CBA, allowing suit based on the state rights does not undermine the purpose of section 301 preemption: guaranteeing uniform interpretation of terms in collective bargaining agreements. Therefore, nonnegotiable state-law rights independent of any right established by contract are not preempted. A contrary rule would permit unions and employers to exempt themselves from state labor standards. Congress never intended to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Id*. at 545-46 (citation, ellipses and quotation marks omitted).

**1. Grievance letter**

The parties do not dispute the existence or terms of the CBA governing Williams's employment relationship with Lockheed. As a preliminary matter, though, the court must determine the effect the August 13, 2004 letter from Lockheed to Williams's union has on his claims. Lockheed claims that grievance settlement agreements are contracts for the purposes of preemption under § 301. Opp'n at 10. Williams claims that they are not. Reply at 7-9.

To support its position that this court should give the grievance letter the same preemptive effect as a CBA, Lockheed points to non-binding authority: *Newton v. Local 801*, 507 F. Supp. 439, 443 (S.D. Ohio 1980) ("Grievance settlement agreements are clearly 'contracts', for purposes of subject matter jurisdiction over actions thereon, within the meaning of 29 U.S.C. § 185."); *Amalgamated Meat Cutters & Butchers Workmen v. M. Feder & Co.*, 224 F. Supp. 739, 739-40 (E.D. Pa. 1963); *Sackett v. Wyatt*, 32 Cal. App. 3d 592, 600-01 (1973); *Davis v. Bell Atl.-W.V., Inc.*, 110 F.3d 245, 249 (4th Cir. 1997).

The Ninth Circuit did not squarely address this issue in *Miller*, but implied that only the terms of a CBA were relevant to determining preemption under § 301. *See, e.g.*, 850 F.3d 548 ("[A] court must consider . . . whether *the CBA* contains provisions that govern the actions giving rise to a state claim.") (emphasis added). A grievance settlement agreement covering a single employee does not implicate the interest behind § 30 in "uniform interpretation of labor contract terms." The court will therefore not look to the grievance settlement agreement when analyzing Williams's claims under *Miller*.

**2. Williams's FEHA claims**

First, the court must ask "whether the CBA contains provisions that govern the actions giving rise to a state claim." *Miller*, 850 F.2d at 548. Lockheed has pointed to nothing in the CBA that covers Williams's disability claims against Lockheed under the California Fair Housing and Employment Act ("FEHA"), Cal. Gov't Code § 12900 *et seq*. Nonetheless, examination of the CBA reveals sections that arguably do cover Willaims's disability claims. Disputes over "working conditions" initially are to "be resolved through oral discussion between the employee, [his] supervisor or manager, and the Senior or Group Steward." CBA art. III, § 2.B. At issue here are the conditions under which Williams was to return to work. Further, the CBA provides that "[e]mployees with disabilities, as defined by state or federal law, may be placed, retained or reinstated, by mutual agreement of the parties, regardless of the seniority principles stated in this agreement." *Id*. art. IV, § 8. The CBA also addresses prolonged disability:

> An employee shall not be terminated by the Company because of a prolonged continuous illness or injury provided the period of disability is not longer than twenty-four (24) months. Such employee shall notify the Company whenever possible at least three (3) working days in advance of the date the employee is able to return to work. Upon being pronounced physically and mentally fit by the Company, the employee shall be reinstated as soon as possible to the same or substantially equivalent job if such a job is available in accordance with the employee's seniority rights. Except as to the length of the period of disability, the provisions of this Subsection D shall be subject to the grievance procedure.

*Id*. art. V, § 3.D. These provisions on disability could govern the handling of Williams's claim of disability. The answer to the first *Miller* question is therefore "yes."

Next the court must ask "whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA."

*Miller*, 850 F.2d at 548.  FEHA gives people the right to "hold employment without discrimination because of . . . physical disability, mental disability, medical condition."  Cal. Gov't Code § 12921(a).  As the Ninth Circuit has held, FEHA claims of the sort Williams brings do not require consideration of a CBA:

> California's statute confers upon employees certain rights not to be discriminated against because of physical handicap or medical condition.  Cal. Gov. Code § 12940. That right is defined and enforced under state law without reference to the terms of any collective bargaining agreement. [The plaintiff]'s state-law claim is consequently independent of the agreement.  That she might also have separate remedies under the bargaining agreement makes no difference.

*Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988) (footnote omitted).  The answers to the second and third *Miller* questions are "yes;" Williams's FEHA claims are therefore not preempted by § 301.  *See Miller*, 850 F.2d at 548.

### 3. Williams's ADRA claim

Williams claims his termination ran afoul of California's Alcohol and Drug Rehabilitation Act ("ADRA"), Cal. Lab. Code §§ 1025-1028.  California Labor Code § 1025 provides, in full:

> Every private employer regularly employing 25 or more employees shall reasonably accommodate any employee who wishes to voluntarily enter and participate in an alcohol or drug rehabilitation program, provided that this reasonable accommodation does not impose an undue hardship on the employer.
>
> Nothing in this chapter shall be construed to prohibit an employer from refusing to hire, or discharging an employee who, because of the employee's current use of alcohol or drugs, is unable to perform his or her duties, or cannot perform the duties in a manner which would not endanger his or her health or safety or the health or safety of others.

As discussed above, the CBA has provisions covering employee disability.  As Williams claims alcoholism as a disability, the CBA contains provisions covering Williams's claim under California Labor Code § 1025, and the answer to the first *Miller* question is "yes."

Again the court must ask "whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA." *Miller*, 850 F.2d at 548.  As Lockheed points out, the California Court of Appeal has questioned the clarity of Labor Code § 1025:

> [I]t is difficult to determine precisely what employer conduct section 1025 prohibits. It contains multiple conflicting undefined standards for employer conduct.  First, the employer must "reasonably accommodate" the employee's rehabilitation program. Second, however, the employer may avoid any obligation under the section if

> compliance would create an "undue hardship." Although the Legislature's statement of policy enacted with the ADRA adds elements for an employer to consider when trying to decide what is reasonable accommodation and what is an undue hardship, it still does not either prohibit or recommend any specific employer conduct. The problem of identifying prohibited employer conduct is compounded by section 1025's broad grant of authority to employers to discharge employees for deficient performance caused by the same condition that precipitates the need for accommodation. Considered in its entirety, section 1025 expresses competing objectives which an employer must balance in attempting to accommodate the alcohol or drug rehabilitation efforts of an employee. Section 1025's undefined and potentially contradictory standards of conduct are insufficient to ". . . enable an employer to know the fundamental public policies that are expressed in that law."

*Sullivan v. Delta Air Lines, Inc.*, 58 Cal. App. 4th 938, 945-46 (1997) (footnotes omitted). However, this critique was written in the course of determining whether Labor Code § 1025 set forth a "substantial and fundamental" policy of the state, which was critical to determining whether a violation of Labor Code § 1025 could form the basis of a state-law claim for "tortious wrongful discharge in violation of fundamental public policy." *Sullivan*, 58 Cal. App. 4th at 942. The elucidation of a "substantial and fundamental" policy upon which to base a public policy is a heavier burden that stating a "clear" enough standard to evaluate without considering a CBA.

There are no published California decisions in which an employer has been held to have violated Labor Code § 1025. *C.f. Gosvener v. Coastal Corp.*, 51 Cal. App. 4th 805, 815-16 (1996) (not violation of Labor Code § 1025 to fire employee after two programs of rehabilitation failed to control employee's alcoholism sufficiently for him to return to work). The Court of Appeal, though, has shed some light on how to apply Labor Code § 1025: "The 'reasonable accommodation' contemplated by section 1025 is time off from work for the affected employee as necessary to participate in a drug or alcohol treatment program, at least to the extent the employer can provide such leave without undue disruption of its business." *Pettus v. Cole*, 49 Cal. App. 4th 402, 459 (1996).

However, the "undefined and potentially contradictory standards" of Labor Code § 1025 compel the conclusion that the section is insufficiently "clear" for Williams's ADRA claim to be resolved independently of a CBA. The answer to the second *Miller* question is therefore "no;" Williams's ADRA claim is thus preempted by § 301.

Williams stated that if the court found his ADRA claim preempted, he would dismiss it. Reply at 5 n.2. Williams's ADRA claim is accordingly dismissed with prejudice.

ORDER DISMISSING CERTAIN CLAIMS AND GRANTING PLAINTIFF'S MOTION FOR REMAND—No. C-05-05210 RMW JAH
7

#### 4. Williams's claim for termination in violation of California public policy

The Ninth Circuit has allowed for the possibility that a claim for wrongful termination in violation of public policy would not be preempted by § 301, stating that "a claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship." *Young*, 830 F.2d at 1001.  The court gave examples of claims that would not be preempted (those based on state statutes to protect whistleblowers or worker health and safety) and claims that would (those based on a "state registration statute" or "public policy against harassment on the job"). *Id*. at 1002.  The court in *Young* then held the plaintiff's wrongful termination in violation of public policy claim preempted because she could not "identify any state statute or other relevant public policy of California" that gave her a protectable interest "transcending the employment relationship." *Id.*

Here, Williams's claim for termination in violation of public policy cannot be based on Labor Code § 1025. *Sullivan*, 58 Cal. App. 4th at 947.  Assuming Williams's wrongful termination claim is based on FEHA, there is a sufficiently clear California standard for considering it without looking to the CBA.  "FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy." *Estes v. Monroe*, 120 Cal. App. 4th 1347, 1355 (2004).  California has many cases on termination in violation of the public policy expressed in FEHA, stemming from *Stevenson v. Superior Court*, 16 Cal. 4th 880 (1997).  *Young* indicates Williams's claim for termination in violation of the public policy is not preempted by § 301.

#### 5. Williams's claim for intentional infliction of emotional distress

The Ninth Circuit has addressed whether § 301 preempts California-law claims for infliction of emotional distress:

> An emotional distress claim is not preempted when it can be resolved without examination or interpretation of the CBA.  If the CBA does not govern the offending behavior, § 301 does not preempt Cook's emotional distress claim.  For this behavior to give rise to the tort of emotional distress under California law, it must be so extreme and outrageous as to go beyond all possible bounds of decency.

*Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239 (1990) (citations and quotation marks omitted).  Whether Lockheed complied with the standards set forth in CBA is relevant to determining whether Lockheed's behavior was "so extreme and outrageous as to go beyond all possible bounds of

decency." As the court in *Miller* pointed out, "[a]ctions that the collective bargaining agreement permits might be deemed reasonable in virtue of the fact that the CBA permits them." 850 F.2d at 550. Williams's claim for infliction of emotional distress will require consideration of the CBA and thus is preempted by § 301.

Williams indicated he would dismiss his claim for intentional infliction of emotional distress if the court ruled it was preempted by § 301. Mot. at 24 n.10. Williams's claim for intentional infliction of emotional distress is accordingly dismissed with prejudice.

**C. Jurisdiction over Williams's remaining claims**

Williams's only remaining claims arise either directly or indirectly from FEHA, a California statute. There is therefore no federal-question jurisdiction over any remaining claim under 28 U.S.C. § 1331. As "the district court has dismissed all claims over which it has original jurisdiction," *see* 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Williams's FEHA-based claims and remands them to the California Superior Court for the County of Santa Clara.

### III. ORDER

For the foregoing reasons, the court

1. dismisses with prejudice Williams's claims for intentional infliction of emotional distress and violation of the ADRA; and
2. remands Williams's remaining claims.

The clerk of this court shall, pursuant to 28 U.S.C. § 1447(c), mail a certified copy of this order to the clerk of the Superior Court for the County of Santa Clara.

DATED:   5/16/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Beth Wolf Mora          bmora@cooperlawoffice.com
Jeremy David Pasternak  jn@pasternaklaw.com

**Counsel for Defendants:**

Bonnie A. Glatzer
Ellen M. Papadakis      empapadakis@thelenreid.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   5/16/06              /s/ JH
                          **Chambers of Judge Whyte**